**CRIMINAL COMPLAINT**
(Submitted electronically)

| United States District Court | DISTRICT of ARIZONA | **VICTIM** |
|---|---|---|
| United States of America<br>v.<br>**Jaquvon Terell Poe**<br>DOB: 2004; United States Citizen. | DOCKET NO. | |
| | MAGISTRATE'S CASE NO.<br><br>25-02237MJ | |

Complaint for violations of Title 18, United States Code, Sections §§ 924(c)(1)(A)(iii), 2, and 924(o).

**COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:**

**COUNT 1:** On or about April 20, 2025, at or near Tucson, in the District of Arizona, unknown persons did knowingly use, carry, and discharge a firearm during and in relation to, and possessed a firearm in furtherance of a crime of violence, that is Attempted Murder, a felony crime prosecutable in a Court of the United States. Defendant **Jaquvon Terell Poe** aided, abetted, counseled, commanded, induced, and procured such discharge in furtherance of a crime of violence; all in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

**COUNT 2:** From a time unknown to on or about April 20, 2025, at or near Tucson, in the District of Arizona, the defendant, **Jaquvon Terell Poe**, and others known and unknown, did knowingly and intentionally combine, conspire, confederate and agree together and with persons known and unknown, to knowingly use and discharge a firearm, during and in relation to a crime of violence for which they may be prosecuted in a Court of the United States, to wit: Attempted Murder under Arizona Revised Statutes 13-1001, 13-1105, and 13-1104, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); all in violation of Title 18, United States Code, Section 924(o).

**BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:**

On April 20, 2025, Tucson Police Department ("TPD") officer ("Victim 1") was working as a member of the Operations Division West ("ODW") Community Response Team ("CRT") in the area of Stone Ave./Fort Lowell Rd. in Tucson, Arizona. He was wearing plain clothes and driving an unmarked City of Tucson vehicle. Victim 1 observed a dark-colored Dodge Charger (with distinct light-colored stripes on the hood near the wheel well) travelling southbound at a high rate of speed. Victim 1 was able to get behind the vehicle and broadcast the license plate to other members of ODW CRT. The license plate was a specialized University of Arizona plate which read ATLFA ("Subject Vehicle").

The Subject Vehicle made a westbound turn onto Alturas from Stone Ave. Victim 1 continued following the Subject Vehicle at an estimated distance of 20 feet behind. While both vehicles traveled westbound, Victim 1 observed a suspect lean their entire upper body out of the rear passenger side window of the Subject Vehicle. Victim 1 described that Subject 1 was looking backwards in his direction, used their left arm to brace their body upright, and pointed their right hand at Victim 1. Victim 1 was unable to see what was in the Subject's hand, but he heard 6 to 10 gunshots and saw smoke coming from where the Subject was leaning out of the window. Victim 1 knew the Subject shot at him and felt as though he was directly targeted. Victim 1 told investigators there were at least three occupants in the Subject Vehicle at the time of the shooting.
**(BASIS OF COMPLAINT CONTINUED ON REVERSE.)**

MATERIAL WITNESSES IN RELATION TO THE CHARGE: N/A

| DETENTION REQUESTED<br>  Being duly sworn, I declare that the foregoing is<br>  true and correct to the best of my knowledge.<br><br>AUTHORIZED BY AUSA *A. Rossi*  /s/<br>**Sworn to telephonically.** | SIGNATURE OF COMPLAINANT (official title)<br>/s/<br><br>OFFICIAL TITLE<br><br>FBI SA Steven Molesky |
|---|---|
| SIGNATURE OF MAGISTRATE JUDGE /s/ | DATE<br>May 29, 2025 |

1) See Federal rules of Criminal Procedure Rules 3, 4.1 and 54

25-02237MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
**Page 2 of 8.**

The Subject Vehicle made a southbound turn onto Castro. Victim 1 created more distance between them but continued to maintain a visual and give the direction of travel for uniformed officers to get there to try and effectuate a stop. While travelling southbound on Castro, Victim 1 advised he heard additional gunshots. The Subject Vehicle turned west on Grant Rd. but made a quick U-turn to go eastbound on Grant Rd. When Victim 1 was at the stop sign at Grant/Castro, he observed the Subject Vehicle travelling eastbound on Grant Rd. and heard additional gunshots. Victim 1 was able to maintain a long distance visual of the Subject Vehicle as it travelled south towards the area of 6th/Euclid Ave. A marked patrol vehicle responded to the area and attempted to stop the Subject Vehicle utilizing the vehicle's emergency equipment to include lights and siren. The Subject Vehicle failed to yield and fled. A short pursuit ensued with the Subject Vehicle, but officers ultimately lost visual of it.

Neither Victim 1 nor his vehicle were struck. Officers responded to the area of the shooting near Stone/Alturas. Officers located approximately thirteen (13) fired .45 caliber cartridge cases on Alturas near Castro as well as two on Grant Rd. in the eastbound lanes of traffic. Officers located a 2005 Blue Ford F150 parked at 116 E. Alturas which had an apparent bullet impact site on the tailgate. They also located a residence at 2502 N. Estrella which had an apparent bullet impact site. The homeowner of that residence, Victim 2, was at home at the time of the shooting. A fired bullet was recovered from inside her residence. A review of the fired cartridge cases recovered from the shooting scene showed the fired cartridge cases have markings consistent with an elliptical-style firing pin, which is consistent with older model Glock firearms.

While processing the scene, officers from Operations Division Midtown ("ODM") received a call for service in reference to an abandoned vehicle in the alley near the 3400 block of E. 27th Street. Officers from ODM CRT responded and located the vehicle unoccupied. They confirmed the vehicle abandoned in the alley was the Subject Vehicle as it bore the University of Arizona license plate (ATLFA) and matched the description provided by Victim 1. The Subject Vehicle was towed as evidence on the evening of 04/20/25 and processed the following day pursuant to an Arizona State search warrant. Inside the Subject Vehicle, a certificate was located with **Hassan Omar Kassim's** ("**Kassim**") name on it as well as registration information for Mohamed M. Ali ("Ali").

Investigators accessed a police database, which showed the Subject Vehicle was near the University of Arizona around 2:40PM on the day of the shooting. Investigators recovered surveillance video depicting the Subject Vehicle entering a parking garage near 4th Street/Euclid. In that video, the driver was visible as the driver side window was rolled down. The driver at the time the Subject Vehicle entered the parking garage matches the physical characteristics of **Kassim**. Subsequently, investigators discovered that during a previous unrelated incident from June 2024, TPD officers contacted Ali regarding the Subject Vehicle. Ali advised while he is the registered owner of the Subject Vehicle, he regularly allows **Kassim**, his nephew, access to drive the Subject Vehicle. Surveillance video shows the Subject Vehicle attempt to leave the parking garage. The video depicts the front seat passenger exit the vehicle, and attempt to manually raise the parking garage arm, but she is unable to. Eventually a passerby uses his vehicle to open the parking garage entrance, and the Subject Vehicle exits out of the garage entrance. The passenger is wearing distinct clothing, to include a long sleeve leopard print hooded sweatshirt, tight blue jeans, and distinct "Nike Airforce 1 07" shoes. Investigators reviewed a recent booking photograph, and a driver's license photograph of **Alexandra Brooke Wisdom** ("**Wisdom**"). Investigators compared those photos to the subject in the surveillance video, and determined them to be the same person, **Alexandra Brooke Wisdom**.

**(BASIS OF COMPLAINT CONTINUED ON NEXT PAGE.)**

25-02237MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
Page 3 of 8.






**(BASIS OF COMPLAINT CONTINUED ON NEXT PAGE.)**

25-02237MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
**Page 4 of 8.**

Investigators contacted the Pima County Probation Department and spoke with **Kassim's** Probation Officer ("Witness 1"). Witness 1 told investigators that **Kassim** has a girlfriend whose name is "Alex." Witness 1 identified photographs of the above-mentioned passenger at the parking garage as **Wisdom**. Investigators also placed her name into Instagram and discovered an Instagram account associated to **Wisdom** and reviewed some of the videos and photographs posted on **Wisdom's** account. Investigators observed several photographs of **Wisdom** wearing a leopard print top that matched the description of the leopard print top being worn by the Subject Vehicle's front passenger in the University of Arizona surveillance video.




(BASIS OF COMPLAINT CONTINUED ON NEXT PAGE.)

25-02237MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
**Page 5 of 8.**

Officers later recovered surveillance video from near the 3400 block of E. 27th Street where the Subject Vehicle was located abandoned. Surveillance video shows that at approximately 6:02 p.m., the Subject Vehicle drives into the alley between 27th Street and 28th Street, from S. Palo Verde. The Subject Vehicle has distinct grey stripes near the front wheels. **Alexandra Wisdom** is driving the Subject Vehicle. The Subject Vehicle exits the camera view. A short time later **Alexandra Wisdom** runs eastbound down the alley, passing at least 3 different security cameras. **Wisdom** is wearing the same clothing she is wearing in the Surveillance video at the parking garage, to include a long sleeve leopard print hooded sweatshirt, tight blue jeans, and distinct "Nike Airforce 1 07" shoes. She is speaking to an unknown person on a cell phone held in her hand. She also has a large white cellphone in her back pocket.

Investigators also identified that on the social media account associated with **Alexandra Wisdom**, in her display photo she is wearing the same or similar distinct jacket that she is wearing in both sets of surveillance videos. In a post on approximately April 6, 2025, **Wisdom** is also holding a large white Apple iPhone. This is consistent with the large phone in her back pocket recorded on surveillance video. In a post on approximately March 11, 2025, she is wearing the same or similar distinct jacket she is wearing in both sets of surveillance videos.



**(BASIS OF COMPLAINT CONTINUED ON NEXT PAGE.)**

25-02237MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
**Page 6 of 8.**

Also on **Wisdom's** social media account Investigators located a post from approximately April, 2024. Visible in the background is the flower pattern **Kassim's** distinctive hoodie, further connecting them.



**(BASIS OF COMPLAINT CONTINUED ON NEXT PAGE.)**

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
**Page 7 of 8.**

Investigators also obtained surveillance video from the original scene, near Stone Ave. and Alturas. The video shows the Subject Vehicle, with an unidentifiable front seat passenger, and the driver wearing a distinctive black hoodie with large flowers on it. Investigators reviewed social media associated with **Kassim** and were able to view photographs of **Kassim** in that distinctive hoodie. Based on the distinctive hoodie, the Subject Vehicle known to be associated with **Kassim**, the University of Arizona surveillance video of **Kassim** driving the Subject Vehicle prior to the shooting, **Kassim**'s association with **Wisdom**, and the surveillance video from Stone Ave. and Alturas itself appears to display **Kassim** driving the Subject Vehicle, **Kassim** was the driver at the time of the shooting.





**(BASIS OF COMPLAINT CONTINUED ON NEXT PAGE.)**

25-02237MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
Page 8 of 8.





**(BASIS OF COMPLAINT CONTINUED ON NEXT PAGE.)**

25-02237MJ

**(BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED.)**
**Page 9 of 9.**

On or about May 16, 2025, investigators obtained preliminary examination results from the TPD Crime Lab of the latent fingerprints recovered from the Subject Vehicle. Comparison of the latent fingerprints lifted from the Subject Vehicle revealed a fingerprint lift collected from the interior rear passenger's side window was a match to **Jaquvon Terell Poe** ("**POE**"). In my training and experience, **POE**'s prints on the Subject Vehicle is consistent with him being in, on, or around that Subject Vehicle. **POE**, as well as **Kassim**, are known members of the 29th Street Bloods.

Pursuant to legal process served on AT&T, on or about May 21, 2025, AT&T provided responsive records for subscriber records for (520) 554-9805 ("**POE** Phone"), a phone Witness 1 provided to investigators as the phone upon which Witness 1 contacts **POE** for probation purposes, and is registered to **POE**'s mother. On May 20, 2025, investigators searched historical call logs from April 1, 2025, to May 1, 2025, for **Kassim**'s phone which were previously received from AT&T pursuant to a federal search warrant obtained in the United States District Court for the District of Arizona, 25-05957MB. That search revealed that the **POE** Phone was in contact with **Kassim** approximately 19 times between April 18, 2025, and April 20, 2025, including twice within approximately an hour before the shooting.

In addition, on May 21, 2025, investigators searched tower dump data received from AT&T pursuant to a federal search warrant obtained in the United States District Court for the District of Arizona, 25-05947MB, for four locations just prior, during, and just after the shooting. That review revealed the **POE** Phone was located near three of those areas—the area of the shooting, the downtown area in which the Subject Vehicle is observed fleeing, and the site in which the Subject Vehicle was dumped. **POE**'s mother's residence is near the location where the Subject Vehicle was dumped and for a short time after the Subject Vehicle is dumped, it appears from phone records that **Kassim**'s phone is near **POE**'s mother's residence.